IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 2:23-cr-00328-DCN-1 |
| vs. | ) | |
| | ) | **ORDER** |
| BERNARD FREEMAN SCOTT, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The following matter is before the court on defendant Bernard Freeman Scott, Jr.'s ("Scott") motion to dismiss the indictment, ECF No. 135. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

On May 2, 2023, the grand jury returned an eleven-count indictment arising from a conspiracy in which Scott is named in Counts 1, 5, 6, 8, 10, and 11. ECF Nos. 1; 3. Count 1 charges that beginning in at least January 2018, Scott and five other co-conspirators conspired to make false statements in order to acquire firearms from licensed dealers in violation of 18 U.S.C. § 371.[1] ECF No. 1 at 1. Counts 5 and 6 allege that Scott aided and abetted a false statement to a federal firearms licensee in violation of 18 U.S.C. § 922(a)(6). Id. Counts 8, 10, and 11 charge Scott with possession of a firearm and/or ammunition on August 8, 2020, on May 5, 2021, and on March 1, 2022, respectively, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1) and 924(a)(8). Id. at

---

[1] The first actions of the conspiracy begin as of January 24, 2018. ECF No. 1 at 3. However, relevant to this order, Scott's first involvement with the conspiracy allegedly occurred on May 19, 2020. ECF No. 1 at 3. Scott had been convicted of four qualifying felonies earlier that year on March 12, 2020. ECF No. 33 at 5.

1

4–5.  An arrest warrant was issued on May 3, 2023, ECF No. 7, and executed on May 9, 2023, ECF No. 24.  Scott pleaded not guilty on May 10, 2023.  ECF No. 47.

Since the charges are, in part, premised on Scott's previous felony convictions, the court also sets forth the convictions which put Scott within the purview of § 922(g)(1).  In 2020, Scott was convicted of four qualifying crimes which violated the South Carolina code of laws: (1) possession of a stolen firearm, S.C. Code Ann. § 16-23-30; (2) breaking and entering a motor vehicle, id. § 16-13-160; (3) failing to stop for a blue light, id. § 56-5-750; and (4) possession with intent to distribute marijuana, id. § 44-53-370(b)(2).[2]  ECF Nos. 33 at 4–5; 135 at 3.  In 2022, Scott was again convicted of possession with intent to distribute marijuana, in violation of S.C. Code Ann. § 44-53-370(b)(2), as well as possession of fentanyl, in violation of S.C. Code Ann. § 44-53-370(d)(2).  ECF No. 33 at 6.  Under South Carolina law, each of these six convictions have a maximum penalty exceeding one year.

On November 29, 2023, Scott filed the instant motion to dismiss the indictment. ECF No. 135.  On January 10, 2024, the United States of America (the "government") responded in opposition, ECF No. 139, to which Scott replied on January 19, 2024, ECF No. 142.  On February 7, 2024, the court held a hearing on this motion.  ECF No. 147. As such, the matter is fully briefed and is now ripe for review.

---

[2] The court notes that the dates of arrest for these crimes span from 2017 to 2019, while Scott was eighteen to twenty-one-years old, though Scott was sentenced for each crime on March 12, 2020.  ECF No. 33 at 4–5.  Scott received 105 days of credit and received a lesser sentence under the South Carolina Youthful Offender Act, S.C. Code Ann. § 24-19-10.  Id.  Scott was sentenced to six years, balance suspended, with three years probation.  Id.

## II.  STANDARD

### A.  Fed. R. Crim. P. 12(b)(3)

The court assumes that this motion is made pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, which sets forth certain defects in the indictment that can be brought before the court on a pretrial motion.[3]  Fed. R. Crim. P. (12)(b)(3). Pursuant to Fed. R. Crim. P. 12(b)(3)(B), the district court may, at any time during the pendency of a case, hear a defendant's claim that an indictment fails to state an offense or is otherwise defective.  See In re Civil Rights Cases, 109 U.S. 3, 8–9 (1883).  An indictment is defective if it charges a violation of an unconstitutional statute.  See United States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004).  Upon a finding that an indictment is defective, the district court must dismiss the indictment.

### B.  Facial vs. As-Applied Challenges

"To succeed in a facial constitutional challenge, a movant 'must establish that no set of circumstances exists under which the Act would be valid.'"  United States v. Hosford, 843 F.3d 161, 165 (4th Cir. 2016) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)); see Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008).  "Because of this stringent standard, a facial challenge is perhaps 'the most difficult challenge to mount successfully.'"  Hosford, 843 F.3d at 165.  A party ordinarily "can only succeed in a facial challenge by 'establish[ing] that no set of circumstances

---

[3] Scott states that the motion is brought "pursuant to Rule 12 of the Federal Rules of Criminal Procedure."  ECF No. 135 at 1.  No specific provision is cited, thus requiring the court to presume, based on the substance of the motion, that Scott brings the motion pursuant to Fed. R. Crim. P. 12(b)(3), which governs motions that must be made before trial and includes alleging that there was "a defect in the indictment or information, including . . . failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v).

exists under which the [law] would be valid,' i.e., that the law is unconstitutional in all of its applications."  Wash. State Grange, 552 U.S. at 449 (first alteration in original) (quoting Salerno, 481 U.S. at 745).

"An as-applied challenge requires only that the law is unconstitutional as applied to the challenger's case; a facial challenge requires this showing as well, but it also requires that there be "no [other, theoretical] set of circumstances" in which the law could be constitutionally applied."  United States v. Mgmt. Consulting, Inc., 636 F. Supp. 3d 610, 619 (E.D. Va. 2022) (quoting Salerno, 481 U.S. at 745).

### C.  Second Amendment

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  In New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 142 S. Ct. 2111 (2022), the Supreme Court clarified the appropriate standard for analyzing Second Amendment claims.  The Supreme Court held that lower courts had been incorrect in reading precedent to require a means-end analysis in evaluating Second Amendment claims.  Id. at 23–24.  Instead, the Court explained that District of Columbia v. Heller, 554 U.S. 570 (2008), held, "on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms" for self-defense.  Id. at 20 (quoting Heller, 554 U.S. at 595).  Further, the Supreme Court emphasized that "Heller and McDonald [v. City of Chicago, 561 U.S. 742 (2010),] expressly rejected the application of any" means-end scrutiny because "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really

worth insisting upon." Id. at 23 (first quoting Heller, 554 U.S. at 634; and then citing

McDonald, 561 U.S. at 790–91). In place of a means-end analysis, then, the Supreme

Court articulated the following standard for considering Second Amendment claims:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 24 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n.10 (1961)).

In applying Bruen's standard, courts must first address the threshold question of

whether the Second Amendment's plain text protects the conduct that is being regulated.

Id. at 17, 24. If it does, "the government must affirmatively prove that its firearms

regulation is part of the historical tradition that delimits the outer bounds of the right to

keep and bear arms." Id. at 19. This requires courts to "assess whether modern firearms

regulations are consistent with the Second Amendment's text and historical

understanding." Id. at 26. Because "Constitutional rights are enshrined with the scope

they were understood to have when the people adopted them," id. at 34 (quoting Heller,

554 U.S. at 634–35), the Second Amendment's "meaning is fixed according to the

understandings of those who ratified it," id. at 28. Thus, in assessing "unprecedented

societal concerns or dramatic technological changes" that could not have been anticipated

by the Founders, "the historical inquiry that courts must conduct will often

involve . . . determining whether a historical regulation is a proper analogue[4] for a

distinctly modern firearm regulation." Id. at 28–29.

---

[4] Google says that "'analog' is standard in American English, while 'analogue' is standard in British English." Since the Supreme Court opts for "analogue" and it "grades my papers," this court will use "analogue."

However, the Court noted that "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." Id. at 30. Instead, "analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin." Id. "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." Id.; see also United States v. Rahimi, 144 S. Ct. 1889, 1897 (2024) ("These precedents [directing courts to examine the historical tradition of firearm regulation] were not meant to suggest a law trapped in amber. . . [h]olding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers."); id. at 1925 (Barrett, J., concurring) ("'Analogical reasoning' under Bruen demands a wider lens: Historical regulations reveal a principle, not a mold.").

### III.   DISCUSSION

Scott argues that the court should dismiss the indictment for two reasons. ECF No. 135. First, Scott moves to dismiss Counts 8, 10, and 11, arguing that the law under which it is charged, 18 U.S.C. § 922(g)(1), is facially unconstitutional because it violates felons' rights to keep and bear arms as protected by the Second Amendment of the United States Constitution and because the law is unconstitutional as applied to Scott, a convicted felon. Id. at 1–2 (citing U.S. Const. amend. II). Second, Scott contends that Counts 1, 5, and 6 are unconstitutional as applied to Scott because those offenses rely on the conclusion that Scott was prohibited from purchasing firearms. Id. at 3–4. Scott provides a four-page filing which explains that the Second Amendment framework enunciated in Bruen, 597 U.S. 1, requires the government to "demonstrate that the

6

regulation is consistent with this Nation's historical tradition of firearm regulation," and the government has purportedly not met that standard regarding the regulation of firearm possession due to a prior felony conviction. ECF No. 135 at 2 (quoting Bruen, 597 U.S. at 17). As such, Scott argues that Counts 8, 10, and 11 of the indictment should be dismissed as facially unconstitutional and that Counts 1, 5, 6, 8, 10, and 11, should be dismissed as unconstitutional as applied to Scott.

In response, the government explains that "the Supreme Court has repeatedly recognized . . . the propriety of disarming prior criminals because the Second Amendment only protects the right of 'law-abiding, responsible' citizens to possess guns." ECF No. 139 at 1. The government structures its response to mimic the two-pronged approach of Bruen, 597 U.S. at 17, and argues that both prongs favor denial of the motion to dismiss. Id. at 8–24. The government also highlights that precedent dictates that defendants similarly situated to Scott cannot mount successful as-applied challenges. Id. at 11–12 (first citing United States v. Moore, 666 F.3d 313, 319–20 (4th Cir. 2012); and then citing Hamilton v. Pallozzi, 848 F.3d 614, 626 (4th Cir. 2017)). Finally, the government considers Scott's specific circumstances and explains that Scott's as-applied challenge must fail because his previous convictions justify disarming him. Id. at 24–25. Namely, the government urges the court to find that a person who has felony convictions for failure to stop for a blue light, possession with intent to distribute controlled substances, and illegal firearms possession is a dangerous person and an analysis of the facial constitutionality of § 922(g)(1) indicates that the government may categorically disarm persons deemed dangerous. Id. The government specifically emphasizes the threat posed by persons who engage in illicit drug use or dangerous

7

firearm misuse and argues that Scott squarely falls in both categories, such that Congress

may rightfully strip him of his Second Amendment rights.  Id.

In reply, Scott reiterates his previous arguments and directly challenges the

government's conclusions.  ECF No. 142.  First, he contends that felons are part of "the

people" mentioned in the Second Amendment because the plain text of the amendment

does not mention this exclusion and "no amendment has been made to the plain language

of the Amendment."  Id. at 1.  In support of his rebuttal, Scott provides a string cite of

cases from Federal District Courts across the country which have purportedly held as

much.[5]  Id. at 1–3.  Second, Scott argues that the government's support did not in fact

exist at the time of the founding, but rather the government cites to laws which were

enacted well after the founding.  Id. at 3–5.  Third, he emphasizes that this court may not

rely on dicta, even dicta from the Supreme Court, to uphold the felon in possession law.

Id. at 5–6.  Fourth, Scott highlights that this court is generally restricted to the precedent

established after Bruen, 597 U.S. at 17, and the Fourth Circuit provides little guidance in

that respect.[6]  Id. at 6.  Fifth, Scott emphasizes that the government bears the burden to

---

[5] Scott cites forty-one cases, only two of which are from district courts within the
Fourth Circuit.  See ECF No. 142 at 1–3 (citing, inter alia, United States v. Price, 635 F.
Supp. 3d 455, 464–65 (S.D.W. Va. 2022), rev'd and remanded, 2024 WL 3665400 (4th
Cir. Aug. 6, 2024); United States v. Coleman, 698 F. Supp. 3d 851 (E.D. Va. 2023)).

[6] The court notes that it asked the parties if they would consent to a continuance
pending the imminent publication of the Fourth Circuit's decisions in several Second
Amendment cases which would resolve this ambiguity.  See, e.g., United States v. Price,
635 F. Supp. 3d 455, 464–65 (S.D.W. Va. 2022), granting reh'g en banc, 2024 WL
163084 (4th Cir. Jan. 12, 2024) (considering facial challenge to §§ 922(g)(1), 922(k));
United States v. Canada, No. 22-4519 (4th Cir. 2023) (argued Dec. 5, 2023) (considering
facial challenge to § 922(g)(1)).  Scott declined to consent to a continuance.  The court
observes that it is difficult to countenance the argument that the Fourth Circuit has no
relevant precedent while simultaneously declining to wait for that precedent to be
published.

prove that § 922(g) is constitutional.  Id. at 7.  Sixth, Scott emphasizes that the catch-all

category of "felon" as delineated by § 922(g)(1) is impermissibly broad, especially with

consideration of historical analogues, because the federal criminal code has exponentially

grown in the centuries since this country adopted the Second Amendment.  Id. at 7–9.

Seventh, Scott argues that the rights established by the Second Amendment are not rights

only available to law-abiding citizens.  Id. at 9.  Eighth, Scott argues that the

government's suggestion that a historical analogue exists in that the early American

government prohibited certain grounds from firearm possession is not relevant to this

inquiry because those limitations existed before the passage of the constitution and

thereby are irrelevant.  Id. at 10.  Ninth, Scott reiterates that the statute is unconstitutional

as applied to him and argues that the government has not met its burden to prove the

opposite because its argument uses an impermissible means-end analysis.  Id. at 10–11.

The court first examines Scott's facial challenge to the constitutionality of

§ 922(g)(1) before turning to his as-applied challenge to the constitutionality of

§§ 922(g)(1), 922(a)(6), 371.

### A.  Facial Challenge

A facial challenge to a legislative act requires the challenger to "establish that no

set of circumstances exists under which the Act would be valid."  Salerno, 481 U.S. at

745.  Thus, Scott bears the burden of showing that under no set of circumstances is the

Act valid.  See id.

In the wake of Bruen, the Fourth Circuit has unequivocally stated that § 922(g)(1)

is facially constitutional.  United States v. Canada, 103 F.4th 257, 258 (4th Cir. 2024);

United States v. Price, 2024 WL 3665400, at *6 n.4 (4th Cir. Aug. 6, 2024) (en banc).  In

Canada, the court expressly rejected Canada's argument that § 922(g)(1) is facially

unconstitutional; instead finding the federal felon-in-possession ban to be facially

constitutional.  103 F.4th at 258.  That panel noted that while the law of the Second

Amendment is "in flux . . . in the wake of [] Bruen," the facial constitutionality of

§ 922(g)(1) is not a difficult question.  Id.  That court further stated that § 922(g)(1) "has

a plainly legitimate sweep" and may constitutionally be applied in at least some set of

circumstances.  Id.  Finally, it gave an example and, in so doing, unequivocally stated that

"the government may constitutionally forbid people who have been found guilty of

[drive-by-shooting, carjacking, armed bank robbery, or even assassinating the President

of the United States] from continuing to possess firearms."  Id. at 258–59.

In Price, the Fourth Circuit, sitting en banc, noted that, as a convicted felon, Price

was "likely not one of the 'law-abiding' citizens the Bruen Court easily concluded were

about 'the people' whom the Second Amendment protects."  2024 WL 3665400, at *6

n.4 (citing Bruen, 597 U.S. at 31–32).  The court reiterated its conclusion that 18 U.S.C.

§ 922(g)(1) "is facially constitutional because it has a 'plainly legitimate sweep.'"  Id.

(quoting Canada, 103 F.4th at 258).  Ultimately, the court left open the question of

whether "a person with a felony conviction (or a particular kind of felony conviction, like

a conviction for a violent crime) may be included within 'the people' for purposes of the

Second Amendment; and if so, whether they can nevertheless be disarmed consistent

with the nation's historical tradition of firearm regulation."  Id.  In practical terms, the

court "declined to opine on the open questions regarding as-applied challenges and

nonviolent felons" because the answers to those questions did not affect the outcome of

the question before the court.  Id.  Relevant to the first question presented in this case, the

Fourth Circuit unambiguously rejected a facial challenge to § 922(g)(1).  See id.

The court's conclusion as to the facial constitutionality of § 922(g)(1) accords

with prior Fourth Circuit cases on this issue that were decided in the wake of Heller—but

prior to Bruen—which did not rely on the means-end analysis, but rather a review of the

plain text of the amendment.[7]  See Moore, 666 F.3d at 318–19; United States v. Pruess,

---

[7] The Fourth Circuit's decisions in Moore, 666 F.3d at 318–19, and in Pruess, 703 F.3d at 245–48, made in the wake of Heller but prior to Bruen, likely foreclose this court from finding that a convicted felon is a protected member of "the people" of the Second Amendment.  In Moore, the court considered a facial and as-applied challenge to § 922(g)(1) by a defendant with two previous felony convictions for selling or delivering cocaine, three common law robberies, and two assaults with a deadly weapon on a government official.  Moore, 666 F.3d at 315.  In Pruess, the Fourth Circuit confronted an as-applied challenge to § 922(g)(1) by a defendant previously convicted of "numerous firearms violations."  Pruess, 703 F.3d at 244.  His convictions involved dealing firearms—not using them—thus the defendant considered himself a "non-violent felon" and thereby entitled to protection by the Second Amendment.  Id. at 245.  Though the analysis in each case did not follow the exact two-step inquiry set forth in Bruen, the Fourth Circuit analyzed whether § 922(g)(1) burdens conduct that comes within the scope of the Second Amendment—i.e., whether the possession of a firearm by a convicted felon is protected by the Second Amendment—which is a similar inquiry to the first step of the Bruen analysis.  See Moore, 666 F.3d at 317, 319; Pruess, 703 F.3d at 246; Bruen, 597 U.S. at 19 (determining that the first step in the predominant circuit court framework was "broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history").
Thus, the decisions in Moore and Pruess did not rely on the means-end analysis which Bruen abrogated and thereby remain good law.  See Payne v. Taslimi, 998 F.3d 648, 654 (4th Cir. 2021) ("Only by granting en banc review may we apply stare decisis balancing to overrule precedent set by a prior panel (or a prior en banc court)"); see also United States v. Finney, 2023 WL 2696203, at *3 (E.D. Va. Mar. 29, 2023) ("Moore and Pruess did not rely on the second step of the two-step test that Bruen abrogated."); United States v. Fowler, 2024 WL 197601, at *5 (E.D. Va. Jan. 18, 2024) ("No decision by the Fourth Circuit has expressly overruled Moore or Pruess, and because those decisions did not rely on the second step of the two-step framework that Bruen abrogated, . . . , Moore and Pruess remaining binding precedent that the Court must faithfully apply.").  The Fourth Circuit has sidestepped the question of "whether Bruen sufficiently unsettled the law in this area to free [the Fourth Circuit] from [its] otherwise-absolute obligation to follow this Court's post-Heller but pre-Bruen holdings rejecting constitutional challenges

703 F.3d 242, 245–48 (4th Cir. 2012).  It also accords with guidance from the Supreme

Court in which it recently reiterated that "many [categorical] prohibitions, like those on

the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'"

Rahimi, 144 S. Ct. at 1902 (quoting Heller, 554 U.S. at 626).  Thus, binding precedent

leads the court to reject Scott's facial challenge to the constitutionality of § 922(g)(1).

Echoing the Fourth Circuit's own rationale, the court need not resolve whether

§ 922(g)(1)'s constitutionality turns on the definition of the "people" at the first step of

Bruen, a history and tradition of disarming dangerous people considered at step two, or

the Supreme Court's repeated references to "law-abiding citizens" and "longstanding

prohibitions on the possession of firearms by felons."  See Canada, 103 F.4th at 258.  The

court denies Scott's motion to dismiss to the extent it is premised on a facial challenge to

§ 922(g)(1) and turns to his as-applied challenge to the same statute.

### B.  As-Applied Challenges

An as-applied challenge raises the question of whether a law with some

permissible uses "is nonetheless unconstitutional as applied to [the defendant's] activity."

Spence v. Washington, 418 U.S. 405, 414 (1974).  The defendant bears the burden of

showing "that his factual circumstances remove his challenge from the realm of ordinary

challenges."  Moore, 666 F.3d at 319.

Scott argues that even if the court were to find § 922(g)(1) to be facially

constitutional, it should nevertheless find § 922(g)(1) to be unconstitutional as applied to

Scott.  ECF No. 135 at 3.  He contends that "there is not a historical tradition that

---

to this same statute.  Canada, 103 F.4th at 258 (citing Moore, 666 F.3d at 318).
Nevertheless, these cases remain instructive to the challenge presently before the court.

supports lifetime criminalization of someone convicted of breaking into cars, fleeing

from the police, or possessing drugs with an intent to distribute them or just to use

them."[8]  Id.  Moreover, the government's theory of the case is that Scott "conspired with

and aided and abetted his codefendants to purchase firearms for him when he could not

due to his prohibited status."  Id. at 4.  Consequently, each of the remaining counts is

dependent on Scott being prohibited from possessing a firearm at the time of the alleged

conspiracy.[9]  Id.  Should the court find that Scott was not, in fact, prohibited from

possessing a firearm, all additional charges must be dismissed.  Id.  Thus, Scott concludes

that the entire indictment should be dismissed because § 922(g)(1) is unconstitutional as

applied to him—meaning he should not have been prohibited from possessing a firearm.

Id.

    The government contends that "the historical record establishes that Congress

may disarm those felons whose underlying conduct demonstrates that they are dangerous

to themselves or others."  ECF No. 139 at 24.  Scott's previous felony convictions for

failure to stop for a blue light, possession with intent to distribute controlled substances,

and illegal firearms possession "show that he represents a threat to public safety" and

therefore that he falls within the group of dangerous individuals which Congress may

disarm.  Id.  To reach this conclusion, the government emphasizes that the Supreme

_____

    [8] For some reason, Scott omits his felony conviction for possession of a stolen firearm.
    [9] To reiterate for the sake of clarity, Scott was convicted of four qualifying felonies on March 12, 2020.  ECF No. 33 at 5.  Scott's first alleged action in furtherance of the conspiracy occurred on May 19, 2020, and his second alleged action in furtherance of the conspiracy occurred on April 17, 2021.  ECF No. 1 at 3.  Therefore, even though the conspiracy began prior to Scott's conviction as a felon, Scott's alleged involvement in the conspiracy occurred after his qualifying convictions.  See id.; ECF No. 33 at 5.

Court has repeatedly held that drugs and guns are a dangerous combination and notes that Scott has repeatedly misused both. Id. at 25 (first citing Smith v. United States, 508 U.S. 223, 240 (1993); then citing Harmelin v. Michigan, 501 U.S. 957, 1002 (1991); and then citing Florence v. Bd. of Chosen Freeholders, 566 U.S. 318, 332 (2012)). Thus, the government urges the court to deny Scott's motion to dismiss to the extent it is premised on an as-applied challenge to § 922(g)(1). Id.

### 1. Counts 8, 10, and 11: 18 U.S.C. § 922(g)(1)

Scott first suggests that his prior convictions should not bring him within the purview of 18 U.S.C. § 922(g)(1). ECF No. 135 at 3. He essentially alleges that even though some of the crimes are classified as misdemeanors under South Carolina law, they nevertheless carry a maximum penalty of over one year imprisonment. Id. Thus, without explicitly making the argument, Scott appears to contend that it would be unconstitutional to permanently disarm him for those underlying offenses—some of which are purportedly misdemeanors.[10] Id. To make this argument, Scott relies heavily on a decision from a district court in the Middle District of Pennsylvania. Id. (citing United States v. Quailes, 688 F. Supp. 3d 184 (M.D. Pa. 2023)[11]). Scott relies on Quailes

---

[10] Scott does not contend that those underlying convictions were for non-violent crimes. ECF No. 135 at 3. He merely summarizes those convictions. Id. To reiterate, in 2020, Scott was convicted of possession of a stolen firearm, breaking and entering a motor vehicle, failing to stop for a blue light, and possession with intent to distribute marijuana in violation of S.C. Code Ann. § 16-23-30, 16-13-160, 56-5-750, 44-53-370(b)(2). Id. In 2022, Scott "was again convicted of possession with intent to distribute marijuana as well as possession of fentanyl" in violation of S.C. Code Ann. § 44-53-370(b)(2), 370(d)(2). Id.

[11] Oddly enough, Scott reiterates both in his initial motion and in his reply brief that the judge who decided Quailes—who he identifies as Judge Reeves—also serves as the chair of the United States Sentencing Commission; but Scott does not explain the significance of that fact. ECF Nos. 135 at 3 n.1; 142 at 5–6. However, a review of the case indicates that the Honorable Jennifer P. Wilson in fact decided the case. Quailes,

to illustrate that another judge in the country dismissed an indictment on an as-applied challenge where the defendant in that case faced "far more serious felony drug offenses than Mr. Scott's." Id.

Scott's reliance on Quailes is misplaced because that district court was bound by binding precedents. See 688 F. Supp. 3d at 188. The Middle District of Pennsylvania is located within the Third Circuit. Id. The Third Circuit recently decided a divided en banc opinion, Range v. Attorney General, 69 F.4th 96 (3d Cir. 2023) cert. granted, judgment vacated sub nom. Garland v. Range, 2024 WL 3259661 (U.S. July 2, 2024),[12] which found § 922(g)(1) unconstitutional under the Bruen framework as applied to the defendant in that case. Id. Thus, Judge Wilson granted the motion to dismiss the indictment following the binding precedents of Bruen and Range. Id. The District of South Carolina is located within the Fourth Circuit. As such, this court will consider precedents from the Fourth Circuit to reach its decision. See, e.g., Moore, 666 F.3d at 319; Price, 2024 WL 3665400, at *6 n.4; id. at *14 (Agee, J., concurring).

In Moore, the Fourth Circuit noted that Heller seemed to leave open the issue of an as-applied challenge to a statute under the Second Amendment. Moore, 666 F.3d at 319. It specified that "a litigant claiming an otherwise constitutional enactment is invalid as applied to him must show that his factual circumstances remove his challenge from the realm of ordinary challenges." Id. The Fourth Circuit went on to note that the

---

688 F. Supp. 3d 184. The Honorable Carlton W. Reeves is the current Chair of the United States Sentencing Commission. Judge Reeves is a United States District Court Judge for the Southern District of Mississippi.

[12] The Supreme Court has since vacated the Third Circuit's en banc decision and remanded the case for further consideration in light of Rahimi, 144 S. Ct. 1889. Garland v. Range, 2024 WL 3259661 (U.S. July 2, 2024).

defendant's "three prior felony convictions for common law robbery and two prior convictions for assault with a deadly weapon on a government official clearly demonstrate that he is far from a law-abiding, responsible citizen." Id. at 319–20. Thus, the court concluded that the defendant "has presented nothing to rebut the presumptive lawfulness of § 922(g)(1) as applied to him;" in fact, the defendant "undoubtedly flunks the 'law-abiding responsible citizen' requirement." Id. at 320. As this court has observed, supra n.6, Moore likely remains good law and thus is binding on district courts within the Fourth Circuit.

The Fourth Circuit, sitting en banc, recently opined on the constitutionality of § 922(g)(1). See Price, 2024 WL 3665400. The majority opinion declined to address the question of as-applied challenges brought by nonviolent felons. See id. at *6 n.4. At most, the majority observed that "as a convicted felon, Price is likely not one of the 'law-abiding' citizens the Bruen Court easily concluded were among 'the people' whom the Second Amendment protects." Id. There is, however, additional guidance on the issue of as-applied challenges to § 922(g)(1) which Judge Agee provides in his concurrence. See id. at *14–15 (Agee, J., concurring). He indicated that, "[t]here can be no serious dispute that § 922(g)(1)'s categorical prohibition on firearm possession is constitutional as applied to Price [a convicted felon, and a violent felon at that]." Id. at *14 (Agee, J., concurring). The concurrence went on to note that while some other circuits have found § 922(g)(1) unconstitutional as to certain nonviolent felons, no federal court has accepted the extraordinary claim that § 922(g)(1) is facially unconstitutional. Id. He concluded by saying, "[t]he upshot of all this is even if § 922(g)(1) is unconstitutional as applied to

16

certain, nonviolent felons—and that issue is far from settled—it assuredly is not unconstitutional as applied to Price, an indisputably recidivist violent felon." Id. at *15.

Moreover, other district courts in the Fourth Circuit that have considered the constitutionality of § 922(g)(1) as applied to a particular defendant have similarly found the statute constitutional as applied to an individual with prior felony convictions, particularly where those convictions were for a violent felony or for multiple separate felonies. See, e.g., United States v. Digsby, 2024 WL 3646972, at *2 (W.D.N.C. Aug. 1, 2024) (two robberies, a second-degree rape, a first-degree kidnapping, an assault with a deadly weapon, and two felon-in-possession convictions); United States v. Sullivan, 2024 WL 3540987, at *4–5 (E.D. Va. July 25, 2024) (armed bank robbery, aggravated assault with intent to rob, possession of a firearm or knife during commission or attempt to commit certain felonies, and interference with commerce by threats or violence); United States v. Smith, 2024 WL 3344685, at *5 (D. Md. July 8, 2024) (second-degree assault, fourth-degree burglary, and unlawful possession of a controlled dangerous substance); see also United States v. Bynum, 699 F. Supp. 3d 418, 423 (E.D.N.C. 2023) (concluding § 922(g)(1) is constitutional as applied to an individual with a prior violent felony conviction).

To be sure, several courts outside of the Fourth Circuit have found § 922(g)(1) to be unconstitutional as applied to particular individuals convicted of nonviolent felonies.[13]

_____

[13] See, e.g., Range, 69 F.4th 96, 100 (finding § 922(g)(1) unconstitutional as applied to the defendant whose lone conviction was for the nonviolent offense of making false statements to obtain food stamps and who, perhaps, did not make those false statements willingly); United States v. Duarte, 101 F.4th 657, 662–63, 676–77 (9th Cir. 2024), reh'g en banc granted, opinion vacated, 108 F.4th 786 (9th Cir. 2024) (finding § 922(g)(1) unconstitutional as applied to a non-violent offender previously convicted of vandalism, felon in possession of a firearm, possession of a controlled substance, and two

Many of those cases are presently unsettled because they have been vacated by either a request for <u>en banc</u> review or by a decision from the Supreme Court.  <u>See, e.g.</u>, <u>United States v. Jackson</u>, 69 F.4th 495, 505–06 (8th Cir. 2023), <u>vacated</u>, (Aug. 8, 2024), <u>cert. granted</u>, <u>judgment vacated</u>, 2024 WL 3259675 (U.S. July 2, 2024), 2024 WL 3711155, at *4–7 (8th Cir. Aug. 8, 2024).  Nevertheless, the examples of nonviolent felony convictions which prompted the successful as-applied constitutional challenges to § 922(g)(1) are readily distinguishable from Scott's record.

Scott has been convicted of multiple, significantly more serious offenses: possession of a stolen firearm, breaking and entering a motor vehicle, failing to stop for a blue light, two convictions of possession with intent to distribute marijuana, and possession of fentanyl.  ECF No. 33 at 4–6.  His six convictions are akin to the convictions that the Fourth Circuit has indicated would survive an as-applied challenge to § 922(g)(1).  <u>See</u> <u>Price</u>, 2024 WL 3665400, at *14–15 (Agee, J., concurring) (explaining that § 922(g)(1) is indisputably not unconstitutional as applied to a recidivist violent felon like Price); <u>Canada</u>, 103 F.4th at 258–59 (explaining that § 922(g)(1) would be constitutional applied to a person convicted of drive-by-shooting, carjacking, armed bank robbery, or assassinating the President of the United States); <u>Moore</u>, 666 F.3d at 319 (finding § 922(g)(1) constitutional as applied to a defendant convicted of drug trafficking crimes, robberies, and assaults with a deadly weapon); <u>Pruess</u>, 703 F.3d at 245 (finding

---

convictions for evading a peace officer); <u>but see</u> <u>Vincent v. Garland</u>, 80 F.4th 1197, 1199–1202 (10th Cir. 2023), <u>cert. granted</u>, <u>judgment vacated</u>, 2024 WL 3259668 (U.S. July 2, 2024) (rejecting an as-applied challenge to § 922(g)(1) post-<u>Bruen</u> brought by a nonviolent felon previously convicted of bank fraud); <u>United States v. Jackson</u>, 2024 WL 3711155, at *4–7 (8th Cir. Aug. 8, 2024) (same, brought by nonviolent felon previously convicted of sale of a controlled substance in the second degree).

§ 922(g)(1) constitutional as applied to a defendant previously convicted of unlawfully dealing firearms); see also United States v. Langston, 2024 WL 3633233, at *7 (1st Cir. Aug. 2, 2024) (finding § 922(g)(1) constitutional as applied to a defendant previously convicted of theft and drug trafficking).

Thus, Scott's multiple felony convictions on separate occasions from the age of 18 to 23 indicate that he too "flunks the 'law-abiding responsible citizen' requirement." See Moore, 666 F.3d at 320; see also United States v. Kline, 494 F. App'x 323, 325 (4th Cir. 2012) (concluding that the defendant's one state felony conviction for eluding a law enforcement officer is sufficient to find § 922(g)(1) constitutional as applied). Stated in terms of the Price concurrence, there can be no serious dispute that the categorical felon-in-possession prohibition of § 922(g)(1) is constitutional as applied to Scott, a recidivist felon with six prior qualifying felony convictions. See 2024 WL 3665400, at *14–15 (Agee, J., concurring); ECF No. 33 at 4–6. For these reasons, the court denies the motion to dismiss Counts 8, 10, and 11.

### 2. Counts 1, 5 and 6: 18 U.S.C. §§ 371, 922(a)(6)

Scott explains that the government's theory of the case hinges on Scott conspiring with and aiding and abetting his codefendants to purchase firearms for him when he could not as a convicted felon. ECF No. 135 at 4. Thus, Counts 5 and 6 are dependent upon Scott being prohibited from possessing a firearm at the time of the alleged conspiracy. Id. In essence, these counts rise and fall with Scott's facial and as-applied challenges to § 922(g)(1). See id. Upon denying Scott's facial and as-applied challenges to § 922(g)(1), the court concludes that Scott's as-applied challenges to Counts 1, 5, and 6 must also fail.

## IV.  CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to dismiss.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 13, 2024**
**Charleston, South Carolina**

20